UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHAEL BRUCE, individually and on behalf of all others similarly situated, | CASE NO. 2:25-cv-00705-JHC |
| Plaintiff, | ORDER |
| v. | |
| SELLEN CONSTRUCTION CO., INC., | |
| Defendant. | |

**I**

**INTRODUCTION**

This matter comes before the Court on Defendant Sellen Construction Co., Inc.'s Motion for Judgment on the Pleadings under Federal Rule of Civil Procedure 12(c). Dkt. # 19. The Court has considered the materials filed in support of and in opposition to the motion, the rest of the file, and the governing law. The Court finds oral argument unnecessary.[1] Being fully advised, for the reasons below, the Court GRANTS the motion, DISMISSES this matter without prejudice, and GRANTS Plaintiff Michael Bruce leave to file a second amended complaint.

---

[1] Defendant requested oral argument; Plaintiff did not.

ORDER - 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

## II

### BACKGROUND

Defendant employed Plaintiff.  Dkt. # 13 at 2, ¶ 1.2.  A Collective Bargaining Agreement (CBA) governed the employment.  Dkt. # 17 at 15, ¶ 40.

Plaintiff originally filed this putative class action in state court, alleging that Defendant failed to: (1) provide rest breaks, *see* Dkt. # 17 at 7–8, ¶¶ 5.2–5.8; (2) provide meal breaks, *id.* at 5.9–5.14; (3) pay minimum wage, since each missed rest or meal breaks was to result in additional pay, *id.* at 8–9, ¶¶ 5.16–5.17; (4) pay required overtime wages, since these missed rest breaks extended the working week past forty hours, *id.* at 9, ¶¶ 5.20–5.21; (5) reimburse Plaintiff for work expenses, amounting to unlawful paycheck deductions or wage rebates (*id.* at 9, ¶ 5.24); (6) pay all wages due at termination (*id.* at 10, ¶ 5.26); and (7) maintain accurate payroll records (*id.* at 10, ¶ 5.28).  Based on these allegations, Plaintiff brings eight state and municipal claims for relief, which are discussed below.  *Id.* at 10-16, ¶¶ 6.1-13.8

Defendant removed the matter to this Court, Dkt. # 1, and Plaintiff then moved to remand.  Dkt. # 14.  On August 15, 2025, this Court denied the remand motion, concluding that, by operation of RCW 49.12.187, a Washington statute providing that the terms of CBAs in the construction industry may "supersede" equivalent state law, Plaintiff's claims fall within the scope of the Labor Management Relations Act (LMRA), 29 U.S.C. § 185, and that it has jurisdiction to hear the resulting federal claims.  *See* Dkt. # 25.

Defendant now moves for dismissal under Rule 12(c).

## III

### DISCUSSION

The standards for deciding a Rule 12(b)(6) motion and a Rule 12(c) motion are "functionally identical," and the "same standard of review" applies to each.  *Cafasso, U.S. ex rel.*

*Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1054 n.4 (9th Cir. 2011) (citation omitted).  In reviewing a motion to dismiss under Rule 12(c), a court takes all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the non-moving party.  *Hines v. Youseff*, 914 F.3d 1218, 1227 (9th Cir. 2019).  "Judgment on the pleadings is properly granted when there is no issue of material fact in dispute, and the moving party is entitled to judgment as a matter of law."  *Fleming v. Pickard*, 581 F.3d 922, 925 (9th Cir. 2009).  To be sure, on such a motion, a court may decline to enter judgment and grant leave to amend a pleading.  *Cf. Yuga Labs, Inc. v. Ripps*, 144 F.4th 1137, 1177 (9th Cir. 2025) (district courts have "wide discretion to determine whether to dismiss a claim with or without prejudice").

A.    Judicial Notice of the CBA

Defendant asks the Court to take judicial notice of the CBA.  A trial court may judicially notice adjudicative facts generally known within its territorial jurisdiction or that are capable of accurate and ready determination from "sources whose accuracy cannot reasonably be questioned."  Fed. R. Evid. 201(1).  Plaintiff disputes neither the existence of the CBA nor its validity, arguing instead that he had not included it in his pleadings and that it should not be considered in this motion.  *See* Dkt. # 22 at 11–12.  Plaintiff opposes Defendant's request and asks that, if the Court were to consider the CBA, it should convert the motion to one for summary judgment.  *Id*.

In ruling on a Rule 12(c) motion, courts "must consider the complaint in its entirety, as well as other sources," such as "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice."  *Webb v. Trader Joe's Co.*, 999 F.3d 1196, 1201 (9th Cir. 2021).  Courts incorporate documents by reference in "situations where the complaint necessarily relies upon a document[,] or the contents of the document are alleged in a complaint, the document's authenticity is not in question and there are no disputed issues as to

the document's relevance." *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010). "[E]xamination of extra-pleading material" is, in addition, permitted "when a defendant asserts that a claim is completely preempted." *Hawaii ex rel. Louie v. HSBC Bank Nevada, N.A.*, 761 F.3d 1027, 1035 (citing *Aetna Health Inc. v. Davila*, 542 U.S. 200, 211 (2004)).

When presented with the issue concerning CBAs, a number of district courts in this Circuit have taken judicial notice of them or used the incorporation-by-reference doctrine. *See, e.g.*, *Jones v. AT&T*, 2008 WL 902292, at *2 (N.D. Cal. Mar. 31, 2008) (taking judicial notice of a CBA); *Hernandez v. Sysco Corp.*, 2017 WL 1540652, at *2 (N.D. Cal. Apr. 28, 2017) (same); *Ly Chhen v. Boeing Co.*, 2018 WL 4103665, at *1 (W.D. Wash. Aug. 29, 2018) (same).  While Plaintiff has offered no case in which a court has refused a party's request to take judicial notice of a CBA, the one case of which this Court is aware rejected the request because the CBA could not reliably prove the plaintiff's union membership, the purpose for which it had been offered. *See Hooks v. San Francisco Opera Assoc.*, 2024 WL 1091189, at *3 (N.D. Cal. Jan. 19, 2024). By contrast, Defendant offers the CBA to "to show only that the CBA says what it says." *Sarmiento v. Sealy, Inc.*, 367 F. Supp. 3d 1131, 1143 (N.D. Cal. 2019).  Plaintiff does not dispute the CBA's authenticity, further supporting its inclusion in this Court's consideration of Defendant's motion.  *See Coto Settlement*, 593 F.3d at 1038.  Under these circumstances, the Court finds that it may, and does, take judicial notice of the CBA since the fact of its contents "can be accurately and readily determined from [a] source[]," namely the CBA itself, "whose accuracy cannot reasonably be questioned." *See* Fed. R. Civ. P. 201(b)(2).

B.    Preemption

In a prior order, the Court ruled that, given RCW 49.12.187, the CBA gives rise to federal jurisdiction under Section 301 of the LMRA. Dkt. # 25.  In that ruling, the Court discussed the test for claims purportedly preempted by the LMRA, but did not explicitly rule that

Plaintiff's claims were preempted, since it considered only Plaintiff's remand motion. *Id.* Here, the Court engages in a fuller preemption analysis.

Section 301 of the LMRA provides that

> Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185. "Although § 301 contains no express language of preemption, the Supreme Court has long interpreted the LMRA as authorizing federal courts to create a uniform body of federal common law to adjudicate disputes that arise out of labor contracts." *Curtis v. Irwin Indus., Inc.*, 913 F.3d 1146, 1151 (9th Cir. 2019). The scope of this preemption is broad, going beyond suits alleging only contract violations. *See Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 209–11 (1985); *Teamsters v. Lucas Flour Co.*, 369 U.S. 95, 103–04 (1962). As pertinent to this suit, the policy undergirding Section 301 requires that "[q]uestions relating to . . . what legal consequences were intended to flow from breaches of [a labor agreement] must be resolved by reference to uniform federal law." *Allis-Chalmers Corp.*, 471 U.S. at 211.

The Ninth Circuit employs a two-part test in evaluating Section 301 preemption claims. *Curtis*, 913 F.3d at 1152. The first step asks whether the "asserted cause of action involves a right that exists solely as a result of the CBA." *Id.* "If the right exists solely as a result of the CBA, then the claim is preempted." *Burnside v. Kiewit Pac. Corp.*, 491 F.3d 1053, 1059 (9th Cir. 2007). If the right sought to be vindicated does not exist solely because of the CBA, the next step asks "'whether the plaintiff's state law right is substantially dependent on an analysis of [the CBA],' which turns on whether the claim cannot be resolved by simply 'look[ing] to' versus 'interpreting' the CBA." *Curtis*, 913 F.3d at 1153 (citing *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1033 (9th Cir. 2019)). Generally, "interpretation" is construed narrowly,

essentially meaning that a state-law claim will not be preempted if it does not raise disputes about the "scope, meaning, or application" of the CBA. *Id.* (citing *Livadas v. Bradshaw*, 512 U.S. 107, 124–25 (1994)).  The parties agree that this two-part test *applies* here.  Dkt. # 19 at 7; Dkt # 22 at 12.  Defendant contends that Plaintiff's claims are preempted via both steps of the test.  Dkt. # 19 at 7–11.

The central question is whether Plaintiff's claims arise from a right that either "exists solely as a result of the CBA" or else cannot be asserted without interpreting that CBA.  As discussed below, an analysis of Plaintiff's claims and their Washington statutory context shows that these claims are preempted under the first step of the test.  Thus, the Court does not reach the second step.  *See Curtis*, 913 F.3d at 1153 (citing *Burnside*, 491 F.3d at 1059).

1.      Plaintiff's rest break, meal break, overtime, and minimum wage claims (first through fourth claims for relief)

Plaintiff's first four claims are preempted by Section 301 for the same reasons.  As discussed in this Court's ruling on Plaintiff's motion to remand, RCW 49.12.187 allows parties to supersede Washington state-law requirements regarding meal and rest breaks.  *See* Dkt. # 25 at 3–5.  As a result, Plaintiff's right to meal and rest breaks flows from the CBA and claims over the failure to provide these breaks are preempted by Section 301 of the LMRA.  This interpretation tracks decisions by courts in this District and the Ninth Circuit.  *See, e.g.*, *Stafford v. Key Mech. Co. of Wash.*, 2021 WL 2211287, at *7 (W.D. Wash. Apr. 27, 2021), *report and recommendation adopted*, 2021 WL 2206496 (W.D. Wash. June 1, 2021) (Section 301 "preempts Plaintiff's rest and meal break claims at the first step because her rights are grounded in the CBA given the application of RCW 49.12.187's construction industry exception."); *Paul & Hope Troupe v. KLB Constr., Inc.*, 2010 WL 11688491, at *2–3 (W.D. Wash. July 7, 2010) (dismissing meal period claim as preempted by Section 301); *Curtis*, 913 F.3d, at 1153–55

1  (concluding that Section 301 "preempted" similar claims by operation of an analogous California

2  statute).

3         Plaintiff's reliance on *Lowry v. Ralph's Concrete Pumping, Inc.*, 2013 WL 2099519

4  (W.D. Wash., May 14, 2013), does not persuade the Court.  First, the decision in that case hinges

5  on the "choice of language and a condition subsequent" in RCW 49.12.187, *id.* at *3; but it relies

6  on a single case, *Burnside v. Kiewit Pacific Corporation*, that interprets a California statute that

7  uses different language from RCW 49.12.187 and does not apply to rest and meal breaks, *id.*

8  ("This section [concerning reimbursements for employer-mandated travel] shall apply to any

9  employees covered by a valid collective bargaining agreement *unless the collective bargaining*

10 *agreement expressly provides otherwise*") (citing *Burnside*, 491 F.3d at 1064) (emphasis added).

11 Second, RCW 49.12.187 can at least as easily be read to cede the right at issue from state law to

12 the CBA, as explained in this Court's decision on the remand motion.  Third, there is no reason

13 why the exception in RCW 49.12.187 would "disadvantage" construction workers either, as the

14 *Lowry* court asserted, *id.*, since, under the statute's plain terms, a failure to negotiate for rest and

15 meal breaks would mean that such a CBA would *not* fall into the statutory exception, and such a

16 worker would benefit from recourse to state law.  This interpretation tracks longstanding

17 Supreme Court recognition that Congress's intent and the text of the nation's labor laws roots the

18 management of the labor-management relationship in the CBA.  *See, e.g.*, *United Steelworkers of*

19 *Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 580, 583 (1960) ("[a CBA] is an effort to erect a

20 system of industrial self-government. . . . [T]he judicial inquiry under [§] 301 must be strictly

21 confined to the question [of] whether the reluctant party did agree to arbitrate the grievance").

22         Plaintiff's claims for minimum and overtime wages are derivative of the meal and rest

23 break claims.  Plaintiff bases the claim for minimum wages on Defendant's alleged failure "to

24 provide Plaintiff . . . with ten minutes additional pay and/or time worked *for each missed rest*

*break*," as well as Defendant's failure to provide Plaintiff with "thirty minutes additional pay and/or time worked *for each missed meal break*." Dkt. # 13 at 9, ¶ 5.16–17 (emphasis added). As such, these derivative claims are preempted by Section 301. Plaintiff has provided no authority distinguishing Defendant's cases dismissing claims derivative of preempted causes of action, nor is the Court aware of any. *See* Dkt. # 19 at 9–10 (collecting cases).

      2.      Plaintiff's claims alleging unlawful deductions and rebates, unpaid wages at termination, willful refusal to pay wages, and failure to pay all compensation (fifth through eighth claims for relief)

Plaintiff's fifth claim for relief states simply that Defendant "ma[de] deductions and collect[ed] rebates from the wages of Plaintiff," and "requir[ed] Plaintiff . . . to incur employer expenses" without reimbursement, in violation of RCW 49.52.060. Dkt. # 13 at 9, ¶ 5.23; *id.* at 14, ¶ 10.2. Plaintiff provides no facts or specificity as to what deductions or rebates occurred, leaving this Court to infer that the wages deducted or rebates collected refers again to wages owed as a result of Defendant's alleged failure to provide rest and meal breaks. If this is so, then this claim is derivative of the first two claims, and thus preempted by the LMRA. To the extent that this claim refers to rebates or deductions unconnected to the rest and meal break claims, then Plaintiff has not provided sufficient facts to "nudge[] their claims across the line from conceivable to plausible." *Bell Atl. Corp. v. Twombly*, 550 U.S. 570 (2007). As best this Court can tell, this claim is unlike the wage claim under RCW 49.52 sustained in *Stafford*, 2021 WL 2211287, at *3, since the wage claim there was based on uncompensated time spent driving the defendant's vehicles; but here, the only specific facts refer to unprovided rest and meal breaks.

Plaintiff's sixth claim regarding wages unlawfully withheld at termination is preempted by Section 301. RCW 49.48.010 provides that

      When any employee shall cease to work for an employer, whether by discharge or by voluntary withdrawal, the wages due to him or her on account of his or her

employment shall be paid to him or her at the end of the established pay period[,] . . . PROVIDED FURTHER, That the duty to pay an employee forthwith shall not apply if the labor-management agreement under which the employee has been employed provides otherwise.

RCW 49.48.010.  The Court is persuaded by the reasoning of *Guardado v. Cascadian Building Management, Ltd.,* 2016 WL 3105041, at *4 (W.D. Wash. June 1, 2016) (RCW 49.48.010 confers a single right to be timely paid . . . that does not parse or separate the right to be paid by a certain time into two separate and distinct rights.").  In a manner analogous to RCW 49.12.187, the "single right to be timely paid" as provided by the statute is displaced by the CBA.  *Id.*  The text of RCW 49.48.010 may also counsel an even stronger conclusion than under RCW 49.12.187, since the former says that the "duty . . . shall not apply," while the latter uses the word "supersede."

Plaintiffs' seventh and eighth claims for relief are dismissed for failure to state a claim. Plaintiff's seventh claim asserts that Defendant's "willful refusal to pay wages" and failure to pay owed wages at termination violate RCW 49.52.050 and that, under RCW 49.52.070, he is entitled to double damages.  Presumably, these willful failures to pay owed wages flow from the missed rest and meal break claims, since Plaintiff has alleged no other sources by which he would be owed unpaid wages.  This claim contains only conclusory statements that recite the elements of the statute.  Courts in this district have rejected similar allegations.  *See Guardado*, 2016 WL. 3105041, at *6 ("This conclusory allegation offers only a 'formulaic recitation of the elements of a cause of action' and is not sufficient to survive a motion to dismiss.") (citing *Twombly*, 550 U.S. at 555).  As in *Guardado*, Plaintiff cites no facts by which to plausibly infer Defendant's willful noncompliance.  Further, if this claim does flow from the missed meal and rest period claims, then the claim may be derivative of Plaintiff's first two claims and preempted.

1

2    As for the eighth claim for relief, the cited Seattle ordinance states that an "employer

3    shall pay all compensation owed to an employee by reason of employment on an established

4    regular pay day at no longer than monthly intervals." SMC 14.20.020. As with Plaintiff's fifth

5    and seventh claims, Plaintiff has identified no other sources of owed wages, making it impossible

6    for this Court to plausibly infer that he has a standalone claim for relief. To the extent that this

7    claim covers unpaid wages flowing from the missed rest break, meal break, and owed wages

8    claims, this claim is also derivative of those claims and preempted.

D.    Leave to Amend

9        Defendant makes two arguments in urging this Court to dismiss Plaintiff's claims with

10   prejudice. Both are unpersuasive.

11       First, Defendant implies that Plaintiff's failure to plead his claims under the LMRA

12   should by itself result in dismissal with prejudice, *see* Dkt. # 19 at 13. But Section 301

13   preclusion "does not automatically require dismissal of a union-represented employee's

14   challenge of an employer's actions" if the employee can show either that "remedies under the

15   [CBA] were exhausted or can yet be exhausted," or, as an exception to the exhaustion

16   requirement, that their "union breached its duty of fair representation in failing to do so." *See*

17   *Kobold*, 843 F.3d at 1036; *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 986 (9th Cir. 2007)

18   (exception to exhaustion requirement exists where employee demonstrates that union breached

19   its duty of fair representation to employee).

20       Second, Defendant contends that, since Plaintiff made no allegations in his complaint that

21   he filed any grievances through his union, he cannot meet the exhaustion requirement. *See* Dkt.

22   # 19 at 11–13. In support of this contention, Defendant argues that Plaintiff cannot amend his

23   complaint to allege exhaustion of grievance procedures for two reasons. Defendant says that

24

Plaintiff in fact submitted no such grievance. *Id.* at 13. Defendant then says that such a

grievance would now be untimely under the CBA and thus amendment would be futile. *Id.*

A complaint should be dismissed with prejudice if amendment would be futile. *See*

*Eminence Cap., L.L.C. v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). Section 301 claims

require plaintiffs to exhaust, or at least attempt to exhaust, a CBA's grievance or dispute

resolution provisions. *DelCostello v. Int'l. Bhd. of Teamsters*, 462 U.S. 151, 163–64 (1983);

*Vaca v. Sipes*, 386 U.S. 171, 185 (1967). Generally, plaintiffs have six months after their

exhaustion of CBA remedies in which to bring a suit. *See DelCostello*, 462 U.S. at 169; *West v.*

*Conrail*, 481 U.S. 35, 38–39 (1987). In Section 301 actions featuring CBAs with mandatory

grievance procedures requiring that claims be brought within a certain amount of time, courts

typically dismiss complaints with prejudice when plaintiffs have failed to exhaust those

procedures and when the limitations period has expired. *See Kobold*, 843 F.3d at 1036–37;

*Soremekun*, 509 F.3d at 985–86 ("In the ordinary case, an employee's failure to exhaust

contractually mandated procedures precludes judicial relief for breach of the [CBA] and related

claims."). And courts in this District have dismissed Section 301 claims for failure to exhaust

grievance procedures. *See, e.g.*, *Ly Chhen*, 2018 WL 4103665, at *3; *Kabigting v. Grp. Health*

*Coop.*, 2009 WL 3103891, at *4 (W.D. Wash. Sept. 24, 2009). But as noted above, an exception

to the exhaustion requirement exists when plaintiffs assert a so-called "hybrid claim" against

their union, either for failure to pursue their grievance or when their union breaches its duty of

fair representation. *DelCostello*, 462 U.S. at 164–65; *Vaca*, 3876 U.S. at 185–86; *Kobold*, 843

F.3d at 1036; *Soremekun*, 509 F.3d at 986–87.

The CBA between the parties here contains an apparently mandatory grievance

procedure. *See* Dkt. # 2-1 at 9–10, art.11 § 2 ("In the event that a dispute arises on the

job . . . the dispute *shall* promptly . . . be referred to the authorized [grievance representatives]")

1    (emphasis added); *see Agnew v. Lacey Co-Ply*, 33 Wash. App 283, 289 (Ct. App. Wash. 1982),

2    *review denied*, 99 Wash. 2d 1006 (Wash. 1983) (use of "shall" in a contract indicates mandatory

3    intent); *CITGO Asphalt Ref. Co. v. Frescati Shipping Co., Ltd.*, 589 U.S. 348, 356 n.3 (2020) (in

4    a contract, "the word 'shall' usually connotes a requirement") (citation omitted).  This grievance

5    procedure requires that, when a job dispute cannot be resolved between a union representative

6    and the employer, the prospective grievant submit that dispute to an authorized representative

7    within 15 days.  *See* Dkt. # 2-1, at 9–10 (CBA art. 11, § 2).  Since the amended complaint does

8    not allege that Plaintiff or his union filed any grievance on his behalf, *see* Dkt # 19 at 12–13, he

9    does fail, at least at first glance, to meet the exhaustion requirement.  But Plaintiff gestures at the

10   possibility of a Section 301 hybrid claim, suggesting in his response brief that it would have been

11   futile to pursue a grievance given the purported trusteeship of the union, *see* Dkt. # 22 at 19–20.

12        On Plaintiff's threadbare presentation of facts, the Court cannot readily conclude that

13   Plaintiff would be unable to satisfy this exception to the exhaustion requirement.  The amended

14   complaint lacks any dates, times, or allegations regarding the conduct of the union, leaving open

15   the possibility of satisfying the exception.  At the summary judgment stage, it would be too late

16   to amend a complaint in such a fashion, *see Soremekun*, 509 F.3d at 988 (rejecting plaintiff's

17   attempt to assert a hybrid claim in opposition to a summary judgment motion).  But a motion for

18   judgment on the pleadings is more like a motion to dismiss than a summary judgment, *see*

19   *Cafasso*, 637 F.3d at 1054 n.4 (Rule 12(b)(6) and Rule 12(c) motions are "functionally

20   identical"), and amendments to complaints are generally permitted with "extreme liberality," *see*

21   *DCD Programs, Ltd. v. Leighton*, 833 F.2d, 183, 186 (9th Cir. 1987) (citation omitted).  Since it

22   is not "clear that the complaint could not be saved by any amendment," dismissal with prejudice

23   would be "improper."  *Harris v. Amgen*, 573 F.3d 728, 737 (9th Cir. 2009) (citation modified).

24

1

2

### IV

#### CONCLUSION

3

4

For the reasons above, the Court GRANTS Defendant's motion for judgment on the

pleadings, Dkt. # 19, and DISMISSES the amended complaint without prejudice.  The Court

5

6

further GRANTS Plaintiff leave to file a second amended complaint in compliance with the

foregoing on or before September 19, 2025.  Should Plaintiff fail to file a second amended

7

8

complaint, the Court will dismiss the case with prejudice.

Dated this 29th day of August, 2025.

9

10

John H. Chun

John H. Chun
United States District Judge

11

12

13

14

15

16

17

18

19

20

21

22

23

24

ORDER - 13